No. 20,770.

THE CITY OF LEAVENWORTH, *Appellee,* v. THE GREEN RIVER ASPHALT COMPANY et al. (THE UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant*).

### SYLLABUS BY THE COURT.

CHANGE OF VENUE—*Disqualification of Trial Judge—Counsel in Relation to Subject Matter of Litigation.* Where the judge of the district court has been of counsel in the case or subject matter thereof he is disqualified to sit, and it is error to refuse to grant a change of venue as provided in section 57 of the civil code (Gen. Stat. 1915, § 6947).

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed June 9, 1917. Reversed.

*W. L. Wood, J. E. McFadden,* both of Kansas City, and *Lee Bond,* of Leavenworth, for the appellant.

*Humphrey Biddle,* city attorney, *C. P. Rutherford,* and *Floyd E. Harper,* both of Leavenworth, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In September, 1902, the Green River Asphalt Company contracted with the city of Leavenworth to pave certain streets of the city with Kentucky rock asphalt according to plans and specifications furnished by the city, and by a separate contract the United States Fidelity and Guaranty Company furnished the city a maintenance bond for ten years from the acceptance of the work, guaranteeing the pavement to remain in good repair and free from all defects and damages due to the use of defective or imperfect material or poor workmanship, or the proper use of said streets and alleys as a roadway, or to the action of the elements. Shortly prior to the expiration of the ten years mentioned in the maintenance bond, and on April 2, 1914, the city brought this action upon the bond to recover damages sustained by reason of the failure of defendants to comply with the contract and the bond. The surety company filed its motion for a change of venue, which was overruled. A jury was waived and the case was submitted

to the court upon evidence, and the court made findings of fact and conclusions of law and rendered judgment against the surety company for the sum of $30,639, which is the judgment appealed from.

The surety company filed a separate answer admitting the execution of the bond, alleging that the contract and specifications for the paving were prepared by the city and the work done under its superintendence and in full conformity with its plans and specifications; that the work when finished was duly accepted and paid for by the city, and that the damages were caused as the result of imperfect and defective plans prepared by the city, and that because of the materials specified and the workmanship required by the plans, the pavement, when completed under the terms and conditions of the contract and specifications, would not endure for the ten years' period of limitation mentioned; that these matters were known or could have been known to the city, but were not known to the surety company until after the filing of the suit. It further alleged that the material used by the asphalt company for the paving of the street under its contract was of the express kind called for in the specifications, and had been inspected and approved and accepted by the city, and denied that the material was of an inferior grade, and alleged that if the pavement became out of repair, and in a defective condition as alleged it was entirely through the fault of the city in specifying faulty and improper material and the improper laying of the same.

The answer further alleged the failure to give notice to make the repairs as required under the terms of the contract, and that after the acceptance of the work the city had permitted many cuts and excavations to be made in the paving by plumbers and other persons unknown to defendants, which cuts caused great damage to the pavement and were allowed to remain open and unprotected for long periods of time, and were afterwards filled with material inferior to that specified in the contract. It was also alleged that shortly after the work was completed two blocks of the pavement were destroyed by the bursting of the water mains of the city, and that neither of the defendants were bound under those cir-

cumstances to make repairs resulting therefrom. It is alleged that during the period covered by the contract and bond the defendants made repairs on the street and had expended therefor $3156.63, and if plaintiff is entitled to recover any amount, then this sum so expended should be deducted therefrom.

The contract provided that the material for the paving should be Kentucky rock asphalt "equally as good as the best quality of asphalt mined at the Buck Horn mines in the Chickasaw Nation or that mined in Breckenridge county, Kentucky." It was alleged in the petition that the material used was not in accordance with the terms of the contract, and a great deal of evidence was offered on both sides of this issue.

The defendants moved for a change of venue for the reason that the Honorable J. H. Wendorff, judge of the district court, had been of counsel in the subject matter of the litigation and was therefore disqualified. The motion was supported by the affidavit of J. A. Thompson, agent and adjuster of defendant surety company, alleging that on June 3, 1908, J. H. Wendorff was city attorney of Leavenworth and as such attorney wrote a letter to affiant enclosing copies of the contract for paving and the maintenance bond sued on in this action, which letter stated the number of yards of paving necessary to be repaired as estimated by the city engineer, and requesting that the matter be attended to at once by the surety company. The affidavit set forth a copy of this letter and also one from the mayor of Leavenworth, dated July 22, 1908, as follows:

"Our city attorney, Mr. Wendorff, advises me in a conversation that you made him a promise some time ago that you would urge upon the Barber people the importance of commencing repair work on Fourth avenue and Broadway street in this city at once. Mr. Wendorff states that this conversation occurred some two or three weeks ago, and that you promised him at that time that the work would commence in very short time. It is our purpose, in the event repairs are not commenced here within the next twenty days, to bring suit against your company to have this work done. We would regret very much being compelled to do this, and we earnestly hope that you will not compel us to do so. I would be pleased to hear from you at once as to what your intentions are in the matter."

The affidavit alleged further that while city attorney Mr. Wendorff had been called upon at various times by the city commissioners for counsel and advice concerning the subject

matter of the litigation, and that on June 30 and July 22, 1908, the affiant conferred with him, as attorney for the city, concerning the character and quality of the pavement in question and defendant's liability therefor, and that in the conference the city attorney took the position that defendant was liable on the bond for the repairs.

The record contains a statement made by the trial judge, in substance that in May, 1908, the paving in question was reported out of repair and that as city attorney, acting under the directions of the city commissioners, he wrote the defendant surety company at Baltimore, stating that it had signed the maintenance bond for the term of ten years, that the pavement was badly out of repair in many places, and that the city commissioners requested the company to have the repairs made, and that if this was not done the city would take such steps as it was authorized to do under the bond. In the statement the trial judge said he did not believe he had ever examined the particular bond, but was familiar with the form; that Mr. Thompson, agent of the surety company, called at his office and asked him for copies of the contracts and bond and to have the city engineer make an estimate of the amount of repairing; that in pursuance thereto he sent him copies of the contract and bond and wrote the letter set forth in the affidavit. He further stated that in the conversation with Mr. Thompson the latter promised that the surety company would have the Barber Asphalt Company do the work of repairing just as soon as possible, and that he reported to the commissioners what Mr. Thompson had said. He denied having advised the city further than as stated; did not remember of talking to Mr. Thompson except the one time mentioned, and denied discussing the liability of the defendants or the quality or character of the pavement.

The first question necessary to decide arises over the refusal of the court to grant a change of venue. If the defendants have not had a trial upon the facts before a duly qualified judge, it is unnecessary to pass upon the questions of law raised by the appeal, for the reason that the facts determined at a subsequent trial may be entirely different, and the questions of law depend very largely upon the facts. As was said in the case of *Tootle v. Berkley,* 60 Kan. 446, 56 Pac. 775:

"None of the essential facts as to the disqualification of the judge is in dispute, and that he was disqualified is hardly open to controversy.

Our statute expressly provides that a judge who is 'interested or has been of counsel in the case or subject-matter thereof' is disqualified to sit; and to prevent a failure of justice by reason of his disqualification provision is made for a trial before a judge or tribunal not disqualified to hear and decide the controversy." (p. 447.) (Civ. Code, § 57, Gen. Stat. 1915, § 6947.)

It was further said in the opinion in that case:

"The principle of law which incapacitates a person from being judge in his own case is extended so as to disqualify a judge who may have been of counsel for one of the parties in the case. It is the purpose of the law that no judge shall hear and determine a case in which he is not wholly free, disinterested, impartial, and independent. 'Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge.' (12 A. & E. Encycl. of L. 40.)" (p. 448.)

Undoubtedly the trial judge believed that because he had not been concerned as an attorney in bringing the action, and had acted in a more or less perfunctory way as an attorney for the city in connection with the subject matter of the controversy, and that all this had occurred several years prior to the filing of the suit, he could try the case fairly and impartially; but in the Tootle case, *supra*, all that the trial judge did was to revive a judgment in an action wherein he had been of counsel, and it was said in the opinion:

"It is generally held that the rule of disqualification should not have a narrow or technical construction, but should rather be broadly applied in all cases where one is called upon to act judicially or to decide between conflicting rights. There was no necessity to trench upon the rule in this case as ample provision is made by statute for the hearing of the matter before a judge who is qualified." (p. 449.)

The order of revivor was held in that case without force or validity.

In the present case it appears beyond question that the judge of the district court had been at one time the counsel and attorney of the city in relation to the subject matter of the controversy, and the defendants have not, therefore, had a trial before a judge qualified to sit in the case, as the statute declares they are entitled to have before a valid judgment can be entered against them.

The judgment is reversed with directions to order a change of venue.